JUDE G. GRAVOIS, Judge.
[^Plaintiff has appealed a trial court’s judgment which dismissed his workers’ compensation claim against his employer’s alleged workers’ compensation insurer, finding that his employer was not covered by a policy of workers’ compensation insurance at the time of plaintiffs work-related accident. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY

On October 12, 2005, plaintiff, Louis Lo-cicero,[1] was injured in a work-related accident while employed by Herrin, Ltd., d/b/a New Orleans Paint and Drywall Services (“N.O. Paint”). After being notified of the accident, Louisiana Workers Compensation Corporation (“LWCC”), the alleged workers’ | scompensation insurance carrier of N.O. Paint, denied coverage for plaintiffs accident. Through a letter from its counsel, LWCC advised N.O. Paint that its application for workers’ compensation insurance was filled out on October 11, 2005 and had a proposed effective date of October 12, 2005. The application was mailed by the agent to LWCC and was postmarked October 12, 2005. It was received by LWCC on October 13, 2005. The agent did not have authority to bind the policy. Further, in accordance with its agreement with the agent, LWCC bound coverage effective at 12:01 a.m. on October 13, 2005, the day after the postmark on the application. LWCC concluded that since the policy is an “occurrence” policy and the policy became effective after the date of the accident, the policy provided no coverage for plaintiffs accident.
On November 16, 2005, plaintiff filed a disputed claim for compensation. LWCC answered the claim and asserted that there was no coverage on the date of the accident. The parties each filed motions for summary judgment on the issue of coverage, which were denied by the trial court. The matter thereafter proceeded to trial solely on the issue of coverage. At trial, the parties submitted eleven joint *649 exhibits which had previously been submitted with the motions for summary judgment. LWCC also submitted one additional exhibit, an affidavit of Gregg Felger, an employee of the United States Postal Service. At the conclusion of arguments, the trial court took the matter under advisement. In due course, the trial court rendered a judgment finding that the envelope containing N.O. Paint’s workers’ compensation insurance application was postmarked October 12, 2005, and accordingly, LWCC’s policy was effective on October 13, 2005. Therefore, N.O. Paint was not covered by a policy of workers’ compensation insurance issued by LWCC on October 12, 2005, the date of the accident. Plaintiffs | ¿workers’ compensation claim against LWCC was accordingly dismissed with prejudice. This timely appeal followed.

ASSIGNMENT OF ERROR

The sole issue to be decided on appeal is whether the trial judge erred in ruling that N.O. Paint was not covered by a policy of workers’ compensation insurance issued by LWCC at the time of the accident. Plaintiff argues that the trial court erred in relying on a Baton Rouge postmark that did not “adequately represent when the [United States Postal Service] assumed custody” of the application. Plaintiff contends that the trial court relied on “an incorrect postmark and resulted in an inequitable outcome.”
The documents admitted into evidence include the deposition of Mr. Danny Her-rin, the owner of N.O. Paint, who testified that he did not have workers’ compensation insurance coverage at the time Hurricane Katrina hit the New Orleans area on August 29, 2005. He decided to obtain workers’ compensation insurance in October 2005 while his company was in the process of doing a drywall and painting job at Kellett Lumber Company. On the advice of a friend, he contacted Lodrigues & Associates (“Lodrigues”), an agent of LWCC. On October 11, 2005, he went into Lodrigues’ office and met with Debora Hibbs to fill out and sign the application for workers’ compensation insurance. Mr. Herrin testified that Ms. Hibbs told him that she had to get the application postmarked that day and that he would have coverage the next day, October 12, 2005. Assuming coverage would be in effect, Mr. Herrin explained that on the next day, October 12, 2005, he allowed plaintiff to climb on scaffolding to paint. At some point on October 12, 2005, plaintiff fell off of the scaffolding and was seriously injured. Mr. Herrin testified that after the accident, he contacted Ms. Hibbs who told him |fithat she went to the post office and the application was postmarked on the day the application was made, thereby providing him with workers’ compensation insurance coverage for this accident.
Ms. Hibbs deposition was also admitted into evidence. She testified that she is an agent for LWCC. Pursuant to Lodrigues’ agreement with LWCC, coverage on a policy becomes effective the day after the policy application is postmarked. She recalled meeting with Mr. Herrin late in the afternoon on October 11, 2005 and telling him that she would do her best to get the application to the post office that day. Ms. Hibbs explained that after the application was completed, she put it on a desk in the office and at the end of the day someone in the office mailed it. She explained that her job duties did not include going to the post office and she did not know who delivered the application to the post office. She wrote October 12, 2005 as the proposed date of coverage for the policy, which presupposed that the application would be postmarked October 11, 2005. Ms. Hibbs explained that the applications were usually mailed at the Harahan Post *650 Office which was near her office. She testified that the envelope for this application was postmarked October 12, 2005 in Baton Rouge, Louisiana. She assumed that the application was mailed at the Har-ahan Post Office, but was taken to Baton Rouge to get postmarked due to disruptions in the postal service after Hurricane Katrina. Ms. Hibbs testified that had Mr. Herrin told her that he would have employees working the next day, she would have informed him that getting the application to the post office does not confirm coverage.
The deposition of Sally Nesmith was also admitted into evidence. Ms. Nesmith testified that she was the director of operations for LWCC. She explained that pursuant to LWCC’s “pricing authority” agreement with its agent in this case, in 2005 when a paper application was completed, coverage was effective the day Rafter the postmark on the application, assuming that the application was compete and was approved and accepted. Ms. Nes-mith explained that this procedure was put into place to avoid people sustaining an injury, going to the agent and filling out an application, and then expecting to have coverage on the day the application is filled out. Ms. Nesmith testified that the agent in this case did not have binding authority. She explained that the envelope in this case was stamped by LWCC as having been received on October 13, 2005, and that the effective date of the policy was October 13, 2005, the day after the envelope was postmarked. Ms. Nesmith testified that she did not know of any incidences in which LWCC made an exception to the postmark rule.
A copy of the envelope in which the application was mailed was admitted into evidence. This envelope bears a postmark date of October 12, 2005 at Baton Rouge.
Plaintiff argues that based on the testimony of Ms. Hibbs, N.O. Paint’s application was mailed at the Harahan Post Office on October 11, 2005 before 5:00 p.m. so that it would be postmarked that day. Plaintiff contends that due to disruptions in operations from Hurricane Katrina, the mail that was deposited in the receptacle at the Harahan Post Office was transported to Baton Rouge for processing. Plaintiff urges this Court to adopt the “common law mailbox rule” that the proper mailing of a document creates a rebuttable presumption that the documents has been received by the addressee.
We are not persuaded by plaintiffs arguments. There is no dispute that LWCC received the pertinent documents. The salient issue centers on the date of the postmark, rather than on the date of the mailing. While plaintiff has asserted various assumptions as to when the application was mailed and which route it took after it was allegedly deposited into the post office receptacle at the Harahan Post |7Office, with all due respect, plaintiff has not produced any proof of these assertions. Ms. Hibbs testified that she put the application on the desk “that has stamps in it” and “[a]t the end of the day, somebody delivers it to the post office.” Ms. Hibbs did not know who the person was that delivered the application to the post office or exactly when it was delivered to the post office. All she could say was that she “felt” that the application was delivered to the post office on October 11, 2005 because the mail was delivered to the post office every day prior to 5:00 p.m. She testified that she “assumed” that the application went to Baton Rouge to get postmarked.
In his affidavit, Mr. Felger attested that in September 2005, he was the manager of customer service operations for the United States Postal Service, New Orleans Branch. Part of his job in September, *651 2005 included re-opening the Elmwood Branch Post Office (the Harahan Post Office) after Hurricane Katrina. He further attested that from “mid-September, 2005 until the present time, including October 2005, the Elmwood Branch Post Office [the Harahan Post Office] has been open for normal business operations, including accepting mail over the counter and other typical functions of a post office branch.” While plaintiff urges this Court to ignore this affidavit, the transcript indicates that this affidavit was admitted into evidence at trial without objection from plaintiff.
Factual findings in a workers’ compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. In applying this standard, the appellate court does not determine whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Id. Where there are two permissible views of the evidence, a factfin-der’s choice between them can never be manifestly erroneous or clearly wrong. Id. For Isthis reason, if the factfinder’s factual determinations are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been the trier of fact, it would have weighed the evidence differently. Id.
The record before us supports the trial court’s finding that on the date of the accident, October 12, 2005, N.O. Paint was not covered by a policy of workers’ compensation issued by LWCC. Accordingly, there is no manifest error in the trial court’s ruling that dismissed plaintiffs workers’ compensation claim against LWCC with prejudice.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.

. Louis Locicero passed away during the course of these proceedings. His father, Joseph A. Locicero, Sr., has been substituted as party-plaintiff.